IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** § | |
| § | |
| v.  § | Criminal No. **3:24-CR-416-L** |
| § | |
| **NAASSON HAZZARD** § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant Naasson Hazzard's ("Defendant" or "Mr. Hazzard") Motion for Judgment of Acquittal ("Motion for Acquittal"), Motion for a New Trial and Authorities in Support Thereof ("Motion for New Trial") (collectively "Motions") (Doc. 111), filed February 13, 2025. After considering Defendant's Motions, Supplements, the Government's response, the record, and applicable law, the court **denies** Defendant's Motions (Doc. 111).

**I.  Background**

On October 1, 2024, the grand jury returned a one-count Indictment (Doc. 16) against Mr. Hazzard. The one-count Indictment alleges as follows:

> On or about August 15, 2024, in the Dallas Division of the Northern District of Texas and elsewhere, Naasson Hazzard, the defendant, did willfully and unlawfully seize, confine, inveigle, decoy, kidnap, abduct, and carry away and hold Adult Victim 1 for some reward, purpose, and benefit, and in committing and in furtherance of the commission of the offense, the defendant used any means, facility, and instrumentality of interstate and foreign commerce, which resulted in the death of Adult Victim 1.
>
> In violation of Title 18, United States Code, Section 1201(a)(1).

Doc. 16 at 1.

On February 4, 2025, the court filed a redacted version of the Indictment ("Redacted Indictment") (Doc. 101), which includes the name of the Adult Victim 1, Caleigha Zangari ("Ms.

Zangari"). Both parties and the court agreed to include her name in the Redacted Indictment, which was provided to the jury before it began its deliberations. The court deemed it important to identify the victim in this case by her full name rather than merely referring to her as "AV1" or "Adult Victim 1."

After one day of jury selection, the trial for this action began on January 22, 2025, and continued until February 4, 2025. On February 3, 2025, after the Government rested, Defendant orally moved for an acquittal pursuant to Federal Rule of Criminal Procedure 29(a) and again after the close of all evidence. The court determined that Count One of the Indictment should be presented to the jury and denied the oral motion for acquittal. On February 4, 2025, the jury returned its verdict, and it found Mr. Hazzard "guilty" of Count One of the Indictment, namely, Kidnapping Resulting in Death, in violation of 18 U.S.C. § 1201(a)(1). Defendant thereafter filed a written motion for acquittal pursuant to Federal Rule of Criminal Procedure 29(c) with respect to the finding of "guilty" as to Count One of the Indictment, and he also filed a motion for new trial regarding Count One of the Indictment.

## II.     Motion for Judgment of Acquittal

### A. Rule 29 Legal Standard

A motion for judgment of acquittal under Federal Rule of Criminal Procedure 29 challenges "the sufficiency of the evidence to sustain a conviction." *United States v. Uvalle-Patricio*, 478 F.3d 699, 701 (5th Cir. 2007). "[A] defendant seeking reversal on the basis of insufficient evidence swims upstream." *United States v. Mulderig*, 120 F.3d 534, 546 (5th Cir. 1997). In reviewing a defendant's challenge to the sufficiency of the evidence, "it is not the reviewing court's role to 'ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Terry v. Hooper*, 85 F.4th 750, 754 (5th Cir. 2023) (quoting

*Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)), *cert. denied*, ⸺ U.S. ⸺, 144 S. Ct. 1074 (2024). Instead, the reviewing court's role is to determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 318-19 (internal quotation marks omitted). "In evaluating the sufficiency of the evidence, the court views all evidence, draws all reasonable inferences, and makes all credibility determinations in the light most favorable to the verdict." *United States v. Drouin*, 470 F. App'x 379, 488 (5th Cir. 2012) (citing *United States v. Mendoza*, 522 F.3d 482, 488 (5th Cir. 2008)). The court determines "only whether the jury made a rational decision, not whether its verdict was correct on the issue of guilt or innocence." *United States v. Dean*, 59 F.3d 1479, 1484 (5th Cir. 1995) (citations omitted). "[I]f the fact finder was presented with sufficient evidence to support the verdict reached, that verdict must be upheld," *United States v. Lucio*, 428 F.3d 519, 522 (5th Cir. 2005), and "[a]ll reasonable inferences [that] tend to support the Government's case must be accepted" with "[a]ny conflicts in the evidence [being] resolved in the Government's favor." *United States v. Burns*, 597 F.2d 939, 940-41 (5th Cir. 1979) (citations omitted).

### B. Elements of the Offense

As an initial matter, the court adopts by reference and incorporation the reasons stated orally after denying Defendant's Rule 29 motion urged at trial. Moreover, Defendant has not presented or argued new information in his Motion for Acquittal that would cause the court to reconsider its prior ruling. While it will not go over all of the evidence presented at trial in punctilious detail, the court expressly determines, *again*, that the largely uncontroverted evidence presented at trial by the Government overwhelmingly supported Defendant's conviction.

The court must carefully consider the elements of Count One, as set forth in the Court's Instructions to the Jury (Doc. 102). To obtain a conviction for Kidnapping Resulting in Death, as charged in Count One of the Indictment, the Government was required to prove each of the following elements beyond a reasonable doubt:

> *First*: That Defendant Naasson Hazzard willfully kidnapped, seized, confined, inveigled, decoyed, abducted, or carried away and held Caleigha Zangari, as charged;
>
> *Second*: That Defendant Naasson Hazzard kidnapped, seized, confined, inveigled, decoyed, abducted, or carried away and held Caleigha Zangari for some reward or purpose or benefit;
>
> *Third*: That Defendant Naasson Hazzard seized, confined, kidnapped, abducted, or carried away and held Caleigha Zangari without her consent;
>
> *Fourth*: That Defendant Naasson Hazzard used any means, facility, or instrumentality of interstate or foreign commerce in committing or in furtherance of the commission of the offense; and
>
> *Fifth*: The death of Caleigha Zangari resulted from Defendant Naasson Hazzard's conduct.

Ct.'s Instrs. to the Jury (Doc. 102) (Feb. 4, 2025) 13.

### C. Defendant's Arguments for Acquittal

In support of his Motion for Acquittal, Defendant contends that the evidence presented during the trial made it clear that Ms. Zangari entered his truck voluntarily on August 15, 2024. Def.'s Mot. at 4. Mr. Hazzard argues that the Government relied "on a theory of inveiglement— that her consent must have been withdrawn at some later point as she was not returned to the same location." *Id.* He argues that consent is a complete defense to kidnapping, and because there was consent, no reasonable jury could have found beyond a reasonable doubt that consent was withdrawn. *Id.* (citing *Hattaway v. United States*, 399 F.2d 431, 433 (5th Cir. 1968); *Chatwin v.*

*United States*, 326 U.S. 455, 464 (1946); *United States v. Redmond*, 803 F.2d 438, 439 (9th Cir. 1986)).

Mr. Hazzard contends that the Government failed to prove beyond a reasonable doubt that he "acted for some reward, purpose, or benefit as required by law." *Id.* at 6. He argues that the Government failed to prove that the venue of the alleged kidnapping took place in the Northern District of Texas rather than the Eastern District of Texas. *Id.* Further, Defendant argues that the Government did not "prove a connection to interstate commerce for this alleged offense." *Id.* at 7. Finally, Mr. Hazzard contends that "the Government failed to prove beyond a reasonable doubt that it was the Defendant's actions that resulted in Ms. Zangari's death." *Id.* at 8. For the reasons explained, the court disagrees with Defendant's arguments.

### D. Discussion

#### 1. Elements One and Three

Because the first and third elements overlap, the court will analyze them together. With respect to the first element, several of the Government's witnesses and exhibits established that Defendant willfully kidnapped, seized, confined, inveigled, decoyed, abducted, or carried away and held Ms. Zangari. The Government presented video footage of Ms. Zangari entering Defendant's semi-truck at 9:27 p.m. on August 15, 2024, which was the last time she was seen alive. Tr. Vol. 1 at 144. Between the time that Ms. Zangari was seen getting into Defendant's truck until Mr. Charles Keith McNeil found her body during a search that was being conducted by Special Agent Jefferey Williams and Special Agent James Thompson, there was no account of her whereabouts other than the cell phone data. The evidence established that Defendant's cell phone and Ms. Zangari's cell phone shared the same location from the time she was picked up by Defendant at the Paris Adult Bookstore until a location in Dallas, Texas, where her cell phone was

phone was found on the frontage road of Interstate 635 (LBJ Freeway). Tr. Vol. 2 at 51. Ms. Zangari's cell phone was admitted into evidence, and it was badly damaged. As Acting Supervisory Special Agent Jason Stewart and Special Agent John Jones testified, for commercial sex workers, a cellphone is their lifeline, and it is necessary to post advertisements and communicate with their customers. In other words, cell phones are used by commercial sex workers to set up commercial sex dates and for protection and safety.

Further, as Investigator Michael Grice testified, Ms. Zangari left her car parked on Harry Hines Boulevard in Dallas, Texas, along with her prescription medication, identification cards, and hotel room keys. Tr. Vol. 1 at 120. Finally, Ms. Zangari was found deceased with a plastic bag tied around her neck. Tr. Vol. 3 at 118. While this is a non-exhaustive list of evidence, the court determines that the evidence, viewed in the light most favorable to the prosecution, was sufficient for a rational jury to find beyond a reasonable doubt that Defendant willfully kidnapped, seized, confined, inveigled, decoyed, abducted, or carried away and held Ms. Zangari.

With respect to the third element, the evidence presented by the Government was sufficient for a rational jury to find that Defendant seized, confined, kidnapped, abducted, or carried away and held Ms. Zangari without her consent. Defendant's argument that Ms. Zangari consented to be with him, thereby making consent a complete defense, is misguided and nonsensical for several reasons. An essential element of Section 1201(a)(1) is that the victim be an unconsenting person. Therefore, if the victim consents to be with the defendant, the Government cannot prove all the elements required to obtain a conviction for Kidnapping Resulting in Death, as charged in Count One of the Indictment. The evidence supports that Ms. Zangari willingly or voluntarily entered Defendant's truck on August 15, 2024; however, that Ms. Zangari may have willingly and voluntarily entered Defendant's truck does not mean that she consented to never return to her

vehicle or hotel room, or to be killed. It strains credulity for Defendant to argue that Ms. Zangari would voluntarily toss her cell phone onto LBJ Freeway and agree to be transported well over 100 miles from where her vehicle was parked. As previously stated, Ms. Zangari's prescription medication, hotel keys, and identification cards were left in her vehicle. Her car was ultimately towed, and the staff discarded her belongings at the hotel where she was staying. In light of all these facts, the court has no pause in concluding that the jury had sufficient evidence to conclude that her consent to be with Mr. Hazzard had been revoked or withdrawn at some point. The precise time it was revoked or withdrawn is quite beside the point.

As the evidence presented at trial established, Ms. Zangari consented to a "quick visit,"[*] as she had done with Defendant on August 12, 2024, and nothing more. Unlike the "quick visit" on August 12, 2024, the August 15, 2024 "quick visit" went terribly wrong. As stated previously, Ms. Zagnari's phone was found badly damaged, which indicates that there was a struggle or some degree of violence. She left her car near the Paris Adult Bookstore—a decision that could have and did result in it being towed because it was abandoned. Moreover, as she left her identification cards, hotel room keys, and medication behind in her car, it is reasonable to infer that no one would leave identification cards, hotel room keys, and medication, unless he or she intended to return to them. Additionally, Ms. Zangari did not check out of her hotel room, where her clothes and belongings remained. What happened to Ms. Zangari was far beyond a consensual sex date.

### 2. Element Two

With respect to this element, the Government presented ample evidence for a reasonable jury to find Defendant kidnapped, seized, confined, inveigled, decoyed, abducted, or carried away and held Ms. Zangari for some reward, purpose, or benefit. The Government was required to

---

[*] A quick visit is a commercial sex date between a commercial sex worker and a client that lasts for fifteen minutes or less. Tr. Vol. 2 at 349.

**Memorandum Opinion and Order – Page 7**

prove that Mr. Hazzard kidnapped, seized, confined, inveigled, decoyed, abducted, or carried away and held Ms. Zangari for some reward, purpose, or benefit. As the Fifth Circuit aptly stated:

> We explained that the Supreme Court has interpreted the or otherwise . . . to encompass any benefit a captor might attempt to receive and that the purpose did not have to be illegal. Although the government must plead and prove that the defendant held the victim for some purpose, the exact nature of that purpose is inconsequential. Indeed, . . . any purpose will do. Further, the jury is not required to unanimously agree on the purpose for the kidnapping.

*United States v. Sanders*, 133 F.4th 341, 378-79 (5th Cir. 2025) (quotation marks and citations omitted). In its Response to Defendant's Motion (Doc. 112 at 8-10), the Government provides more than sufficient evidence to establish that the benefit to Mr. Hazzard or purpose of kidnapping Ms. Zangari was to kill her. The Government also provided more than sufficient evidence to establish that a reasonable jury could find that Defendant kidnapped and later killed Ms. Zangari to prevent her from speaking with his wife about his infidelity. The court agrees with the Government on this issue, and nothing is accomplished by restating the evidence, as the court accepts its arguments and evidence, and incorporates them as if repeated herein verbatim. As stated above, the exact nature of the purpose is inconsequential. As a result, the court determines that the evidence presented was sufficient for a reasonable juror to find that Defendant kidnapped, seized, confined, inveigled, decoyed, abducted, or carried away and held Ms. Zangari for some purpose or benefit.

### 3. Element Four

With respect to this element, the Government's evidence was sufficient to prove that the fourth element that Defendant used any means, facility, or instrumentality of interstate or foreign commerce in committing or in the furtherance of the commission of the offense. As the court stated in its November 20, 2024 Memorandum Opinion and Order (Doc. 40), "telephones, the Internet, and hotels that service interstate travelers are all means or facilities of interstate

commerce sufficient to establish the requisite interstate nexus." Doc. 40 at 5 (citing *United States v. Phea*, 755 F.3d 255, 266 (5th Cir. 2014) (citations omitted))*; see also* Ct.'s Instrs. to the Jury (Doc. 102) (Feb. 4, 2025) 14 ("You are instructed that motor vehicles, cellular phones, and the Internet are instrumentalities of interstate commerce."). The Government presented evidence and testimony that Defendant used his semi-truck, cellphone, and the Internet to facilitate the kidnapping of Ms. Zangari. The court determines that the evidence, viewed in the light most favorable to the prosecution, was sufficient for a rational jury to find that Defendant used any means, facility, or instrumentality of interstate or foreign commerce in committing or in the furtherance of the commission of the offense.

### 4. Element Five

With respect to the final element, the evidence presented by the Government was sufficient for a rational jury to find that the death of Ms. Zangari resulted from Defendant's conduct. As stated earlier, the last time Ms. Zangari was seen alive was entering Defendant's truck. Special Agent Page testified that the GPS data from Defendant's truck showed that during the early morning hours of August 16, 2024, it was parked for over forty minutes near the location where Ms. Zangari's body was found. Tr. Vol. 5 at 211-12. Additionally, the Government presented the deleted Google search records from Defendant's phone in which he searched "how many years for first second and third degree murders," "second degree murders meaning," and "first degree murders meaning." Tr. Vol. 6 at 237-238. The court determines that the evidence, viewed in the light most favorable to the prosecution, was sufficient for a rational jury to find that the death of Ms. Zangari resulted from Defendant's conduct.

Finally, the Government proved by a preponderance of the evidence that the charged offense of kidnapping *commenced* in the Northern District of Texas. As the court instructed the jury,

> There is no requirement that the entire crime alleged in Count One had to occur or take place in the Northern District of Texas, but for you to return a "guilty" verdict, the Government must prove by a preponderance of the evidence that the offense charged began, continued, or ended in the Northern District of Texas.

Ct.'s Instrs. to the Jury (Doc. 102) (Feb. 4, 2025) 11. As stated previously, Ms. Zangari entered Defendant's truck on Harry Hines Boulevard in Dallas, Texas, which is located in the Northern District of Texas. This evidence was sufficient for a rational jury to find that the offense commenced or began in the Northern District of Texas.

Because the court determines that the jury was presented with sufficient evidence to support the verdict reached, that verdict must be upheld. *See Lucio*, 428 F.3d at 522. Accordingly, after considering Defendant's Motion for Acquittal, the Government's response, applicable law, the record, and the court's own recollection of the evidence at trial, the relevant portions of the transcript of the proceedings in this case, and viewing the evidence in the light most favorable to the Government, the court **concludes** that there was more than sufficient evidence for the jury to find beyond a reasonable doubt each of the essential elements of the offense charged in the Indictment that are the subject of Defendant's request for a judgment of acquittal.

### III. Motion for New Trial

#### A. Rule 33 Legal Standard

Rule 33(a) of the Federal Rules of Criminal Procedure allows the court, upon a defendant's motion, to "vacate any judgment and grant a new trial if the interest of justice so requires." The Fifth Circuit has explained that "justice so requires" whenever there exists an "error of sufficient

magnitude to require reversal on appeal." *United States v. Wall*, 389 F.3d 457, 474 (5th Cir. 2004). "[M]otions for new trial are not favored, and are granted only with great caution." *United States v. O'Keefe*, 128 F.3d 885, 898 (5th Cir. 1997) (citation omitted). Consequently, "[t]he remedy of a new trial is rarely used; it is warranted only whe[n] there would be a miscarriage of justice or whe[n] the evidence preponderates heavily against the verdict." *Id.* (citation and internal quotation marks omitted); *Wall*, 389 F.3d at 466 (same). Simply stated, the evidence in this case *does not* preponderate heavily against the verdict; it does the exact opposite by preponderating heavily in favor of the jury's verdict. Further, a court may not grant a motion for new trial absent a "demonstration of adverse effects on substantial rights of a defendant." *Id.*

In expounding on this standard and to assist district courts in deciding whether to grant a Rule 33 Motion, the Fifth Circuit held as follows:

> In determining whether to grant the motion, the district court must carefully weigh the evidence and may assess the credibility of the witnesses during its consideration of the motion for new trial, but must not entirely usurp the jury's function, or simply set aside a jury's verdict because it runs counter to result the district court believed was more appropriate.
>
> Setting aside a jury's guilty verdict in the interests of justice may be appropriate under circumstances [when] the evidence brought forth at trial may tangentially support the verdict, but in actuality, preponderates sufficiently heavily against the verdict such that a miscarriage of justice may have occurred. Similarly, while vested with discretion to grant a new trial pursuant to Rule 33 if necessary in accordance with the interests of justice, we have observed that this power should be exercised infrequently by district courts, unless warranted by exceptional circumstances.

*Tarango*, 396 F.3d at 672 (internal quotation marks and citations omitted).

### B. Discussion

Defendant requests that the court "employ the standard of review prescribed by Rule 33 to the grounds raised in Defendant's Rule 29 motion for judgment of acquittal." Def.'s Mot. at 10. Defendant contends that the court "should weigh the evidence and assess the credibility of the

Government's witnesses instead of viewing the evidence in light most favorable to the Government." *Id.* Defendant does not state why justice requires a new trial or whether there is an error of sufficient magnitude that requires reversal on appeal. Mr. Hazzard merely requests the court to "employ the standard of review prescribed by Rule 33 to the grounds raised in Defendant's Rule 29 motion." *Id.*

In response, the Government argues that Defendant's "recycled sufficiency arguments are meritless" because the witness testimony at trial was credible and proved beyond a reasonable doubt that Defendant committed all of the elements necessary to obtain a conviction pursuant to Section 1201(a)(1). Doc. 112 at 20. The Government contends that "[t]he totality of the evidence admitted at trial demonstrated beyond a reasonable doubt that Hazzard committed the offense of kidnapping resulting in death." *Id.* at 25. The court agrees.

Defendant's conclusory request that the court employ the Rule 33 standard to his Rule 29 Motion is insufficient for it to determine the basis for his Motion for New Trial. The court must "carefully weigh the evidence and may assess the credibility of the witnesses during its consideration of the motion for new trial." *Tarango*, 396 F.3d at 672 (internal quotation marks and citations omitted). The court has performed this function and painstakingly reviewed the testimony of each witness and considered the same factors as the Motion for Acquittal in assessing the credibility of the witnesses and evidence. The court took notes, observed the demeanor of the witnesses, and determined the witnesses to be credible. Moreover, Defendant fails to state the evidence or witnesses that he believes lack credibility, such that the interest of justice would require a new trial. Accordingly, after considering Defendant's Motion For a New Trial, the Government's response, the foregoing legal standard, the evidence, and the jury's verdict, the court **concludes** that Defendant is not entitled to a new trial.

## IV. Conclusion

For the reasons herein stated, the court **concludes** that a reasonable jury could have found that the evidence and testimony established beyond a reasonable doubt that Defendant Naasson Hazzard committed each of the essential elements of offense charged in Count One of the Indictment. Accordingly, the court **denies** Defendant's Motion for Acquittal. With respect to Defendant's Motion for New Trial, the court **determines** that the arguments advanced by Mr. Hazzard have no merit. Therefore, for the reasons herein stated, the court **concludes** the evidence with respect to Count One does not so heavily preponderate against the verdict rendered as to result in a miscarriage of justice. Accordingly, the court **denies** Defendant's Motion for New Trial.

**It is so ordered** this 12th day of June, 2025.

_____
Sam A. Lindsay
United States District Judge